609 F.2d 112
 1980-1 Trade Cases 63,001
 THREE J FARMS, INC., U. S. Textile Corporation, Shapiro &
Son Bedspread Corp. and Troy H. Cribb & Sons, Inc., in
behalf of themselves and all other parties similarly
situated and circumstanced, Appellants,
v.
ALTON BOX BOARD CO.; Container Corporation of America;
Hoerner Waldorf Corp.; Inland Container Corp.; St. Joe Paper
Co.; St. Regis Paper Co.; Stone Container Corp.; Tim
Poffenbarger; Ennis McCarter; Westvaco Corp.; Boise Cascade
Corp.; Champion International, Inc.; the Chesapeake Corp. of
Virginia; Consolidated Packaging Corp.; the Continental
Group, Inc.; Corco, Inc.; Crown-Zellerbach Corp.; Diamond
International Corp.; Dura-Containers, Inc.; Fiberboard
Corp.; Georgia-Pacific Corp.; Green Bay Packaging, Inc.;
International Paper Co.; Interstate Container Corp.;
Longview Fibre Co.; MacMillan Bloedel, Inc.; MacMillan
Bloedel Containers, Inc.; Menasha Corp.; Olinkraft, Inc.;
Owens-Illinois, Inc.; Packing Corp. of America; Potlatch
Corp.; Southwest Forest Industries, Inc.; Union Camp Corp.;
U. S. Corrugated Fibrebox Co.; Western Kraft East, Inc.;
Weyerhaeuser; Williamette Industries; the Fibre Box Assn.,
an unincorporated association; and "John Doe" and "Richard
Roe", the names"John Doe" and "Richard Roe" being
fictitious; the parties intended being those parties who
participated in the unlawful act alleged herein, Appellees.
 No. 78-1896.
 United States Court of Appeals,
Fourth Circuit.
 Argued May 9, 1979.
Decided Nov. 9, 1979.
 
 Robert L. Stoddard, Spartanburg, S. C. (Moore, Stoddard & Stoddard, Spartanburg, S. C., on brief), for appellants.
 Thomas G. Slater, Jr., Richmond, Va. (Ray V. Hartwell, III, Edgar M. Roach, Jr., Hunton & Williams, Richmond, Va., on brief), for appellees.
 Before FIELD, Senior Circuit Judge, and WIDENER and HALL, Circuit judges.
 FIELD, Senior Circuit Judge:
 
 
 1
 Commencing in March of 1977, in the wake of a federal grand jury investigation in the Southern District of Texas, a number of actions were filed in various federal courts throughout the country against corrugated container manufacturers, including all of the defendants in the present case, alleging that they had violated Section 1 of the Sherman Act, 15 U.S.C. § 1, over an eighteen year period by engaging in a nationwide conspiracy to fix the prices of their products. After some 37 civil actions had been filed, a motion was made before the Judicial Panel on Multidistrict Litigation to consolidate all of the cases in one judicial district, and on November 29, 1977, the Panel transferred the cases to the Southern District of Texas. Thereafter, virtually all of the class plaintiffs amended their several complaints by adopting a single Unified and Consolidated Complaint. Additionally, a nationwide class of all persons who had purchased containers or other corrugated products from any defendant, including any subsidiary or affiliate, at any time during the period from January, 1960, to January 25, 1978, was certified in the multidistrict litigation. Thereafter, on June 30, 1978, the plaintiffs in the present case, who concededly are members of the class certified in the multidistrict litigation, filed this action in the state court in Spartanburg County, South Carolina, based upon the antitrust provisions of the South Carolina Code, §§ 39-3-10, Et seq. (1976).
 
 
 2
 On July 31, 1978, the defendants removed the case to the United States District Court for the District of South Carolina, and on August 16, 1978, the plaintiffs filed a motion to remand to the state court, charging that there was neither federal question nor diversity jurisdiction. On August 29, 1978, the defendants filed a motion for a stay of further proceedings, or extending the defendants time to respond to plaintiffs' motion to remand until the Multidistrict Panel acted upon motions pending in the Texas litigation. On October 13, 1978, the district judge entered an order in which he found, Inter alia, that there was no federal question jurisdiction nor complete diversity of citizenship between the parties and, accordingly, granted the motion to remand the case to the state court. The district judge also denied the defendants' motion for a stay, stating that his consideration of the removal issue with respect to subject matter jurisdiction was not dependent upon any proceedings in the multidistrict litigation. Pursuant to this order, the original pleadings and a certified copy of the docket entries were forwarded to the clerk of the state court.
 
 
 3
 On October 23, 1978, the defendants filed a motion asking that the remand order of October 13th be held invalid because the defendants had inadvertently been denied the opportunity to argue in opposition to the plaintiffs' motion to remand. Following a hearing on this motion, on October 26, 1978, the court entered an order which stated that the order of October 13th had been entered "by mistake and inadvertence" and declared it to be null and void. The clerk of the court was directed to deliver a copy of the order to the clerk of the state court "and to retrieve the file mistakenly returned to that Court." Pursuant to the directions of the court, the defendants filed a memorandum in opposition to the remand and on November 29, 1978, the district judge entered an order in which he reviewed the case at some length and denied the remand to the state court. From this action of the district court the plaintiffs have appealed.
 
 
 4
 The defendants have asked that we dismiss this appeal on the ground that the district court's order of November 28, 1978, denying remand is neither a final decision nor an interlocutory order of such a nature that an immediate appeal may be taken. It is, of course, beyond question that an order of a district court denying a motion to remand, standing alone, is not a final order appealable under 28 U.S.C. § 1291. Aberle Hosiery Co. v. American Arbitration Assn., 461 F.2d 1005, 1006 (3 Cir. 1972); Capital Bancshares, Inc. v. North American Guar. Ins. Co., 433 F.2d 279, 282 (5 Cir. 1970). However, while we have no direct appellate jurisdiction in such a case, we may, nevertheless, treat this appeal as a petition for a writ of mandamus.[1] Young Properties Corp. v. United Equity Corp., 534 F.2d 847, 854 (9 Cir. 1976); Kasey v. Molybdenum Corporation of America, 408 F.2d 16 (9 Cir. 1969); International Products Corporation v. Koons, 325 F.2d 403 (2 Cir. 1963). We recognize, of course, that we should proceed with caution in using the writ of mandamus when a direct appeal is prohibited, and should resort to such a jurisdictional basis only under compelling circumstances. We think, however, the circumstances of the present case are of such a nature that we should draw upon our authority under the "all-writs" statute, 28 U.S.C. § 1651, and exercise our power of mandamus to review the action of the district court.
 
 
 5
 We do not address ourselves to the district court's appraisal of the jurisdictional questions in either of its orders for in our opinion the entry of the order of remand on October 13, 1978, divested the district court of all jurisdiction in this case and precluded it from entertaining any further proceedings of any character, including the defendants' motion to vacate the original remand order. See Garrison v. Atlantic Life Ins. Co., 18 F.Supp. 469 (E.D.S.C.1937). The prohibition against further consideration of the remand order is found in the plain language of 28 U.S.C. § 1447(d) which commands that an order "remanding a case to the State court from which it was removed is not reviewable on appeal Or otherwise * * *." (Emphasis added) This proscription against review was recognized by the Court in Gravitt v. Southwestern Bell Tel. Co., 430 U.S. 723, 97 S.Ct. 1439, 52 L.Ed.2d 1 (1977), and by our court in Sullivan v. Simons, 337 F.2d 239 (4 Cir. 1964). Unquestionably, the statute not only forecloses appellate review, but also bars reconsideration of such an order by the district court. In the case of In re La Providencia Development Corporation, 406 F.2d 251 (1 Cir. 1969), the district court had reconsidered its remand order and entered a second order purporting to vacate the remand. In granting a writ of mandamus, the court observed that "there is no more reason for a district court being able to review its own decision, and revoke the remand, than for an appellate court requiring it to do so. Both are foreclosed; nothing could be more inclusive than the phrase 'on appeal or otherwise.' " Id. at 252-253. The underlying rationale was stated by the court as follows:
 
 
 6
 "Removal in diversity cases, to the prejudice of state court jurisdiction, is a privilege to be strictly construed, * * * and the state court proceedings are to be interfered with once, at most. This is not only in the interest of judicial economy, but out of respect for the state court and in recognition of principles of comity. The action must not ricochet back and forth depending upon the most recent determination of a federal court."
 
 
 7
 Id. at 252.
 
 
 8
 The defendants do not question the principles enunciated in these cases, but contend that the review of errors committed in connection with the entry of a remand order which are unrelated to the standards of 28 U.S.C. § 1447(c)[2] is permitted, and rely upon Thermtron Products, Inc. v. Hermansdorfer, 423 U.S. 336, 96 S.Ct. 584, 46 L.Ed.2d 542 (1976) as support for this argument. In Thermtron, the Court, noting that § 1447(c) provides for a remand when the district court determines that "the case was removed improvidently and without jurisdiction," held that a review was not foreclosed where the district court had remanded "on grounds wholly different from those upon which § 1447(c) permits remand." Id. at 344, 96 S.Ct. at 589. Unlike Thermtron, in the present case, the district court, in its order of October 13, 1978, clearly determined that there was an absence of federal jurisdiction and, accordingly, that the case had been "removed improvidently." Since the order was plainly within the bounds of § 1447(c), it was immune to review by a court of appeals or reconsideration by the district court itself.
 
 
 9
 Whether a district court has the authority to vacate a remand order which was entered by "mistake and inadvertence" in the true sense of that phrase is a question we need not decide for it is clear that the order of October 13, 1978, cannot properly be characterized as one inadvertently entered. As we have noted, the order indicates that the court had carefully considered the jurisdictional questions and reached the conclusion that the case should be remanded to the state forum. Counsel for the defendants, however, urge upon us that the original remand order was properly vacated because their "due process right to be heard had been inadvertently denied." We find nothing of such constitutional dimensions in this case. The plaintiffs' motion to remand was properly served upon counsel for the defendants, and thereafter the defendants filed their motion to stay the proceedings. The memorandum in support of this motion referred to the motion to remand and pointed out to the district court the impact a remand would have upon the Texas litigation. It is clear that the defendants had an opportunity to voice their opposition to the remand motion, and their failure to do so, whether due to the court's inadvertence or otherwise, does not, in our opinion, raise any constitutional question. The cases cited by the defendants on this point are inapposite, E. g., Fleming v. Gulf Oil Corporation, 547 F.2d 908 (10 Cir. 1977), and Bass v. Hoagland, 172 F.2d 205 (5 Cir. 1949). Fleming involved a judgment of dismissal which had been entered on the Ex parte motion of a defendant and in which judgment was entered without any notice whatever to the plaintiff. Similarly, Bass dealt with a default judgment in which the notice required by Rule 55(b)(2), Fed.R.Civ.P., had not been given to the opposing party.
 
 
 10
 Since we conclude that the district court lacked jurisdiction to vacate the original order of remand, a writ of mandamus is appropriate in this case, for "traditional use of the writ in aid of appellate jurisdiction both at common law and in the federal courts has been to confine an inferior court to a lawful exercise of its prescribed jurisdiction * * *." Roche v. Evaporated Milk Assn., 319 U.S. 21, 26, 63 S.Ct. 938, 941, 87 L.Ed. 1185 (1943). See Thermtron Products, Inc. v. Hermansdorfer, supra, 423 U.S. at 352-353, 96 S.Ct. 584. Accordingly, this case is remanded to the district court with instructions to return this case, together with all appropriate pleadings and papers, to the Court of Common Pleas of Spartanburg County, South Carolina.[3]
 
 
 
 [1]
 At oral argument, counsel for the defendants graciously agreed that if we determined that this appeal should be treated as a petition for mandamus they would waive the procedural formalities incident to such treatment
 
 
 [2]
 28 U.S.C. § 1447(c) reads as follows:
 (c) If at any time before final judgment it appears that the case was removed improvidently and without jurisdiction, the district court shall remand the case, and may order the payment of just costs. A certified copy of the order of remand shall be mailed by its clerk to the clerk of the State court. The State court may thereupon proceed with such case.
 
 
 [3]
 In his order of November 29, 1978, the district judge referred to certain conduct of counsel for the plaintiffs which had occurred subsequent to his order of October 13, 1978, and indicated that the attorneys were using the state litigation to "harass the defendants." Having divested itself of jurisdiction by the original remand order, the district court had no continuing supervisory authority over the conduct of counsel, nor was any such conduct an appropriate basis for vacation of the remand. We might add that if, in fact, the plaintiffs were using the state litigation in an improper manner, we have every confidence that the South Carolina Court has the authority and judicial resourcefulness to deal with such a problem