# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

DISTRICT OF COLUMBIA,

      Plaintiff,

    v.

PRO-FOOTBALL INC. d/b/a,
WASHINGTON COMMANDERS, *et al.*,

      Defendants.

Civil Action No. 22-cv-3813

## MEMORANDUM OPINION

Plaintiff, the District of Columbia, moves to remand this case to D.C. Superior Court, arguing that this court lacks diversity jurisdiction. Pl.'s Mot. to Remand at 6–12, ECF No. 16 ("Remand Mot."). It also requests attorneys' fees associated with its remand motion. *Id.* at 13–14. For the reasons below, the court will GRANT in part and DENY in part the District's motion.

## I.    BACKGROUND

In the summer of 2020, media reports claimed that the Washington Commanders, the District's professional football team, and its owner, Dan Snyder, had fostered a culture of sexual harassment and verbal abuse. Compl. ¶ 3, ECF No. 13 ("Compl."). These revelations sparked public criticism and raised consumer concerns. *Id.* ¶ 4. Responding to the growing backlash, the National Football League ("NFL") announced an independent investigation, and the Commanders pledged their full cooperation. *Id.* ¶¶ 4, 7. The District claims that "[d]espite their public proclamations promising to uphold the integrity of the investigation," the Commanders and the NFL "worked to thwart the investigation and suppress its results" by entering into an agreement

whereby Snyder could "block the public release of any information" stemming from the investigation. *Id.* ¶ 8.

On November 10, 2022, the District brought a consumer protection enforcement action in D.C. Superior Court against the Commanders, Snyder, the NFL, and NFL Commissioner Roger Goodell, under the District's Consumer Protection Procedures Act ("CPPA"). *Id.* at 3; D.C. Code §§ 28-3901 *et seq.* That act "establishes an enforceable right to truthful information from merchants about consumer goods and services that are or would be purchased, leased, or received in the District." D.C. Code § 28-3901(c). The District's Attorney General has the authority to "bring an action in the Superior Court" representing the District's "public interest." *Id.* § 28-3909(a). The District can "obtain a temporary or permanent injunction prohibiting the use of [a] method, act, or practice" and require "the violator to take affirmative action, including the restitution of money or property." *Id.*

Count One of the Complaint alleges that Defendants misled consumers and failed to disclose material information related to the Washington Commanders' internal investigation, in violation of D.C. Code §§ 28-3904(e)–(f-1). Compl. ¶¶ 149–55. Count Two asserts that the Washington Commanders and Snyder misled the public as to their knowledge of, and Snyder's role in, the Commanders' hostile work environment, violating D.C. Code §§ 28-3904(e)–(f-1). *Id.* ¶¶ 156–63. The District seeks, *inter alia*, injunctive relief, civil penalties, and restitution. *Id.* ¶ 11.

On December 23, 2022, Defendants—none of whom are District citizens—timely removed the case to this court based on diversity jurisdiction. Notice of Removal ¶¶ 8–27, ECF No. 1 ("Notice of Removal"); Compl. ¶¶ 14–18. On December 30, 2022, the District moved to remand this case. Remand Mot. at 3–14.

## II.    LEGAL STANDARD

Federal courts are courts of limited jurisdiction.  *See Gen. Motors Corp. v. EPA*, 363 F.3d 442, 448 (D.C. Cir. 2004).  A defendant may therefore only remove a civil action to federal district court if the court has subject matter jurisdiction over the dispute.  *See* 28 U.S.C. § 1441(a).  Where, as here, a plaintiff moves to remand a case to state court, the removing defendant "bears the burden of proving that removal was proper."  *Arenivar v. Manganaro Midatlantic, LLC*, 317 F. Supp. 3d 362, 367 (D.D.C. 2018) (quotations and citation omitted).  Courts construe the removal statute narrowly.  *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108 (1941).  "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."  28 U.S.C. § 1447(c).

## III.    ANALYSIS

### A.  Diversity Jurisdiction

Defendants assert that federal jurisdiction exists pursuant to the court's diversity jurisdiction under 28 U.S.C. § 1332.  *See* Notice of Removal ¶¶ 8–27.  To satisfy diversity jurisdiction, the parties must be citizens of different states, and the amount in controversy must exceed $75,000.  *See* 28 U.S.C. § 1332(a)(1).  It is undisputed that none of the Defendants are citizens of D.C., but "a State is not a 'citizen' for purposes of diversity jurisdiction."  *Moor v. Alameda Cnty.*, 411 U.S. 693, 717 (1973).  As such, states cannot typically sue or be sued in federal court on the basis of diversity jurisdiction.  *See id.*  The same principle applies to the District of Columbia.  28 U.S.C. § 1332(e) (specifying that the District is a state for purposes of diversity jurisdiction); *Long v. District of Columbia*, 820 F.2d 409, 413 (D.C. Cir. 1987) ("We think we must treat the District like a state . . . .").  The citizenship of a nominal or formal party, however, is disregarded in determining the existence of diversity, and only those with a real and substantial

interest in the controversy are considered. *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 460–61 (1980).

Defendants argue that the court has diversity jurisdiction because the District is merely a nominal party and not a real party in interest, with the real plaintiffs being only those customers who relied on Defendants' alleged deceptive conduct. *See generally*, Defs.' Opp'n to Remand Mot. at 3–12, ECF No. 30 ("Defs.' Opp'n"). In assessing whether the District is a real party in interest, thereby destroying diversity jurisdiction, the court examines: (1) whether the District has asserted a quasi-sovereign interest in this lawsuit by articulating "an interest apart from the interests of particular private parties" involved in the case; and (2) whether the challenged conduct affects a "sufficiently substantial segment" of the District's population. *Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 607 (1982).

i.     **Quasi-Sovereign Interest**

A state "has a quasi-sovereign interest in the health and well-being—both physical and economic—of its residents in general." *Id*. This interest includes advocating for "the continuing prosperity of [a state's] econom[y]." *Pennsylvania v. Kleppe*, 533 F.2d 668, 674 (D.C. Cir. 1976). As noted above, the District is suing Defendants for their alleged "public misrepresentations, omissions, and ambiguities of material fact" to customers regarding Defendants' cooperation with an investigation into complaints of sexual misconduct, harassment, and a hostile work environment. Compl. at ¶¶ 1–11. Courts in this district have found that when the District sues under the CPPA, a quasi-sovereign interest exists because the CPPA provides an avenue for the District to protect "the economic well-being of their citizens who were defrauded." *District of Columbia v. JTH Tax LLC*, No. 22-cv-3165, 2023 WL 130736, at *3 (D.D.C. Jan. 9, 2023) (quotations and citation omitted); *District of Columbia v. Exxon Mobil Corp.*, 640 F. Supp. 3d 95,

110 (D.D.C. 2022), *aff'd*, 89 F.4th 144 (D.C. Cir. 2023).

So too here. The CPPA's statutory framework makes clear that the District has a quasi-sovereign interest in "prosecuting consumer protection violations." *Exxon Mobil Corp.*, 640 F. Supp. 3d at 110. For instance, the CPPA authorizes the District to sue "in the public interest," rather than solely to recover for private individuals. D.C. Code § 28-3909(a). It also empowers the District to seek forms of relief unavailable to private citizens, such as civil penalties, *id.* § 28-3909(b), and to seek injunctive relief without demonstrating actual damages, *id.* § 28-3909(a). As other judges on this court have noted, these distinctions show that the District has its own "pecuniary interest in this lawsuit distinct from the private financial interests of individual citizens," thereby establishing a quasi-sovereign interest that goes beyond merely advocating on behalf of injured consumers. *Exxon Mobil Corp.*, 640 F. Supp. 3d 95 at 111 (cleaned up); *see also JTH Tax*, 2023 WL 130736, at *3.

Defendants advance three counter arguments, none of which are persuasive. First, they contend that the CPPA should not categorically confer quasi-sovereign status just because it is invoked and that the court should instead assess whether such an interest exists by examining "the essential nature and effect of the proceeding." Defs.' Opp'n at 5–10 (citation omitted). While it is true that courts must "look behind the pleadings to ensure that parties are not improperly . . . destroying diversity jurisdiction," *Mississippi ex rel. Hood v. AU Optronics Corp.*, 571 U.S. 161, 174 (2014), Defendants fail to meaningfully differentiate the nature of the District's interest in this litigation—to prosecute allegedly deceptive business activities "calculated to mislead consumers so they would continue to support the Team financially," Compl. ¶ 2,—from the quasi-sovereign interests that courts have recognized in other consumer protection cases. *See, e.g., JTH Tax*, 2023 WL 130736, at *3–4 (recognizing the District's quasi-sovereign interest in a

CPPA action against a tax preparation business that allegedly deceived consumers); *Exxon Mobil Corp.*, 640 F. Supp. 3d 95 at 110–11 (recognizing the District's quasi-sovereign interest in a CPPA action against energy companies for alleged misrepresentations regarding the harmful effects of fossil fuels); *New York by Abrams v. Gen. Motors Corp.,* 547 F. Supp. 703, 705–07 (S.D.N.Y. 1982) (recognizing New York's quasi-sovereign interest in an action against a car company for deceptive business practices involving defects in a type of transmission); *Nevada v. Bank of Am. Corp.*, 672 F.3d 661, 671 (9th Cir. 2012) (recognizing "Nevada's sovereign interest in protecting its citizens and economy from deceptive mortgage practices").

Defendants' second argument is that the District does not allege that it suffered any actual injury as a result of the alleged misstatements, but Defendants cite no caselaw requiring such allegations to show a quasi-sovereign interest. *See* Defs.' Opp'n at 10. Indeed, requiring a state to allege a direct injury would be superfluous in the context of prosecuting consumer protection violations because such actions, by definition, seek to protect *consumers*. In any event, the CPPA makes clear that unfair and deceptive business practices run afoul of the District's public interest. *See* D.C. Code § 28-3909(a) (authorizing the District to act "in the public interest" in bringing CPPA enforcement actions). Such harm to the District's public interest therefore satisfies any injury requirement under the quasi-sovereign interest inquiry. *See JTH Tax*, 2023 WL 130736, at *3.

Finally, Defendants claim that the District lacks a quasi-sovereign interest because the relief sought would primarily benefit District consumers and is available to "affected individuals themselves, were they to file a complaint on their own behalf." Defs.' Opp'n at 11 (citation omitted). Not so. "The fact that private parties may also benefit from the District's lawsuit does not negate the District's substantial interest in this case." *JHH Tax, LLC*, 2023 WL 130736, at *4.

Moreover, the District also seeks civil penalties, which individuals cannot obtain. Compl. at 37; D.C. Code § 28-3909(b). It also seeks injunctive relief for violations without having to prove damages, which private citizens cannot do. Compl. at 37; *compare* D.C. Code § 28-3903(b), *with* D.C. Code § 28-3905(k). "These distinctions make clear that the District has its own pecuniary interest in this lawsuit distinct from the private financial interests of individual citizens." *Exxon Mobil Corp.*, 640 F. Supp. 3d 95 at 111 (quotations and citation omitted); *see also Bank of Am. Corp.*, 672 F.3d at 671–72 (highlighting various forms of relief sought by the state that were not available to individual citizens).

### ii. Substantial Injury

Under the substantial injury factor, in determining whether a state is a real party in interest, there are no "definitive limits on the proportion of the population of the State that must be adversely affected by the challenged behavior." *Alfred L. Snapp & Son*, 458 U.S. at 607. And, in evaluating whether a substantial segment of a state's population has been harmed, courts look beyond those directly affected to consider the broader, indirect effects of the alleged injury. *Id.* A state may therefore satisfy this jurisdictional factor where only 0.03% of its population is directly involved. *See id.* at 599, 609. Courts in this district have similarly found that harm directly affecting as little as ".2% of the District's population" can qualify as a sufficiently substantial segment to establish that the District is a real party in interest. *JTH Tax*, 2023 WL 130736, at *5.

Defendants suggest that the challenged conduct affects only a narrow group of consumers—specifically, those who purchased tickets and merchandise after July 2020 and who, despite "consider[ing] withdrawing financial support," continued to make purchases "with the understanding that a thorough, unbiased investigation was underway." Defs.' Opp'n at 13.

Defendants argue that the substantial injury requirement is unmet because this group represents a fraction of the District's population. *Id.*

It is true that the District does not quantify the total number of consumers who were affected by the conduct alleged in its lawsuit, and the targeted population may in fact be a "smaller subset of an identifiable group." Defs.' Opp'n at 13; *see generally* Compl. at 1–47. As noted above, however, even if the District's targeted consumer population is minuscule, that number can still satisfy the substantial injury factor and weigh against finding federal jurisdiction. *See JTH Tax*, 2023 WL 130736, at *5; *Alfred L. Snapp & Son*, 458 U.S. at 609. Indeed, "numerous other courts" have "found that 'the raw number of individuals directly' affected is not determinative of whether a state has alleged injury to a substantial segment of its population." *JTH Tax*, 2023 WL 130736, at *5 (quoting *People by Vacco v. Mid Hudson Med. Grp., P.C.*, 877 F. Supp. 143, 148 (S.D.N.Y. 1995)).

This is particularly true where, as here, Defendants' alleged misconduct indirectly impacts a far broader range of individuals than just those who purchased tickets with the understanding that an unbiased investigation was underway. *See* Pl.'s Reply at 11–12, ECF No. 32. "Allowing Defendant to continue deceiving District residents would undermine the integrity of D.C. law, weaken the marketplace, and enable other residents to be harmed in the future." *JTH Tax*, 2023 WL 130736, at *5. In light of these potential downstream harms, the court finds that there is a sufficiently substantial segment of D.C.'s population affected by Defendants' alleged misconduct.

The court therefore finds that the District qualifies as a real party in interest, that the court lacks subject matter jurisdiction, and that the case must be remanded to D.C. Superior Court.

**B. Attorneys' Fees**

When granting a motion to remand, a district court may award attorneys' fees under 28 U.S.C. § 1447(c). The court may only award such fees "where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005). The threshold for objective reasonableness is quite low, requiring only that the defendant's grounds for removal had "at least some logical and precedential force." *Knop v. Mackall*, 645 F.3d 381, 383 (D.C. Cir. 2011). When "non-removability is obvious or contrary to well-settled law," however, courts can impose associated costs and expenses. *Ballard v. District of Columbia*, 813 F. Supp. 2d 34, 39, 45 (D.D.C. 2011) (citation omitted).

The District argues that the court should award it fees and costs because Defendants have "failed to provide any objectively reasonable basis for removal." Remand Mot. at 13. Defendants, on the other hand, argue that even if the court remands, it should still not award fees and costs because no "on-point case law from the D.C. Circuit" exists. Defs.' Opp'n at 15. Defendants have the better argument.

Although the court disagrees with Defendants' theory of jurisdiction in support of removal, they presented a position supported by logical reasoning and relevant precedent. They cited applicable case law, made coherent arguments that a court could reasonably accept, and relied on decisions from this district, such as *Exxon* and *JTH Tax*. *See, e.g.*, Defs.' Opp'n at 3–14. Moreover, whether the District can sue under diversity jurisdiction and the CPPA is not a settled question in this Circuit. The Circuit's review in *Exxon* focused on federal question jurisdiction. 89 F.4th at 148. Therefore, Defendants' decision to seek removal—despite adverse precedent from district courts in *Exxon* and *JTH Tax*—was not contrary to well-settled law.

Consequently, because Defendants had an objectively reasonable basis for seeking removal, the court will deny the District's request for attorneys' fees and costs.

## IV.    CONCLUSION

For these reasons, the court GRANTS IN PART and DENIES IN PART the District's Remand Motion, ECF No. 16.  A corresponding order shall follow.

Date: November 10, 2025

*Tanya S. Chutkan*

TANYA S. CHUTKAN
United States District Judge